**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ERIC PETERSON, | ) | |
| | ) | |
| Petitioner, | ) | C.A. No. 07-56 Erie |
| | ) | |
| v. | ) | |
| | ) | **District Judge Cohill** |
| H.J. Marberry, Warden, | ) | **Chief Magistrate Judge Baxter** |
| FCI McKean, | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.    RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus filed by Petitioner, Eric Peterson, be granted in part and denied in part.

## II.   REPORT

Petitioner is a federal inmate who was incarcerated at the Federal Correctional Institution, McKean ("FCI McKean"), located in Bradford, Pennsylvania, at the time he filed the instant action. He is serving a 72-month term of imprisonment that was imposed by the United States District Court for the Northern District of Ohio on March 15, 1996. (Ex.[1] 1a). As will be explained in more detail below, the Federal Bureau of Prisons (the "BOP" or "Bureau") originally computed Petitioner's federal sentence to have commenced, pursuant to 18 U.S.C. § 3585(a), on June 27, 1996, and his projected release date was set at September 17, 2001 (assuming he received all good conduct time available). Almost ten months later, on April 18, 1997, the BOP discovered that it had erroneously commenced Petitioner's federal sentence because he was still subject to undischarged sentences imposed by the State of Ohio, which he had to serve before his federal sentence commenced. It returned Petitioner to state authorities on or around May 16, 1997 and the United States Marshals Service ("USMS") filed a detainer. On December 8, 2005, the state paroled Petitioner to the federal detainer. At that time, the BOP re-computed his federal sentence to have

---

[1] All exhibit citations are to those documents appended to the Response at Document # 10.

commenced, pursuant to 18 U.S.C. § 3585(a), on December 8, 2005. His projected release date now is set at April 16, 2011 (assuming he receives all good conduct time available). Not surprisingly, Petitioner disputes the BOP's current computation of his federal sentence. He has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 in which he requests that this Court order his immediate release. (Petition, Document # 3; see also Traverse, Document # 11). The Warden of FCI McKean has filed a Response at Document # 10.

### A. Relevant Statutes and BOP Policy

The BOP is the agency responsible for implementing and applying federal law concerning the computation of federal sentences. See, e.g., United States v. Wilson, 503 U.S. 329, 331 (1992); 28 C.F.R. § 0.96. In this case, the following statutes are relevant: 18 U.S.C. § 3584(a), which governs a federal sentencing court's authority to order that a federal sentence be served concurrently with a state sentence; 18 U.S.C. § 3621(b), which governs the BOP's authority to designate a state prison as a place of confinement for service of a federal sentence; and, 18 U.S.C. § 3585(a), which governs the date upon which a federal sentence commences. The BOP's policies regarding sentence computation are set forth in Program Statement 5880.28, Sentence Computation Manual ("PS 5880.28"). Also relevant to this case is Program Statement 5160.05, Designation of State Institution for Service of Federal Sentence ("PS 5160.05").[2]

### 1. The determination of whether a federal sentence is concurrent with or consecutive to a state sentence

18 U.S.C. § 3584(a) provides, in relevant part:

[I]f a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively.… Multiple terms of imprisonment imposed at different times run

---

[2] BOP Program Statements are internal agency guidelines, and in many cases the policies set forth therein are "akin to an interpretive rule." Reno v. Koray, 515 U.S. 50, 61 (1995). The BOP policies at issue in this case are contained in Program Statements and are not also published in any federal regulation, and thus are not subject to public notice and comment before adoption. Therefore, the policies are not entitled to the deference described in Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 842 (1984). See Stiver v. Meko, 130 F.3d 574, 577 (3d Cir. 1997). However, the policies are still entitled to "some deference" from this court. Koray, 515 U.S. at 61; Roussos v. Menifee, 122 F.3d 159, 163-64 (3d Cir. 1997); see also United States v. Mead Corp., 533 U.S. 218, 234-35 (2001); Elizabeth Blackwell Health Center for Women v. Knoll, 61 F.3d 170, 182 (3d Cir. 1995) (deferring to interpretive rule that was not subject to notice and comment when the Secretary of Health and Human Services's reconciliation of the competing interests in the Medicaid statute and Hyde Amendment was reasonable).

consecutively unless the court orders that the terms are to run concurrently.[3]

The BOP interprets the phrase "an undischarged term of imprisonment," to include, in relevant part, any lawfully imposed state sentence *or revocation of a conditional release term (probation, parole, etc.)*. PS 5880.28, Chapt. 1, Page 31 (emphasis added).

The BOP presumes that federal and state sentences are to be served consecutively unless the federal sentencing court orders that the sentences are to be served concurrently. See PS 5880.28, Chapt. 1, Pages 31-33; PS 5160.05, Pages 2-7. It also recognizes that a federal sentencing court "may, from time to time, order concurrent service of the federal sentence at some time after its imposition. This may occur when primary jurisdiction resided with the state and the court believed mistakenly that the inmate was in federal custody for service of the federal sentence on the date of imposition." PS 5160.05, Page 5.

Importantly, the BOP also has the authority to effectuate the service of concurrent federal and state sentences in circumstances when the intent of the federal sentencing court or the goals of the criminal justice system would make the exercise of that authority appropriate. Barden v. Keohane, 921 F.2d 476, 482-83 (3d Cir. 1990); PS 5160.05, Pages 5-7. For example, the BOP recognizes that the following might occur: the state had primary custody over an inmate, his federal sentence is imposed first, the federal sentencing court does not order that the federal sentence be served concurrently with any state sentence, and then the state court subsequently imposes a state sentence and orders that it is to be served concurrently with the federal sentence. Id. at 478-83; PS 5160.05, Pages 5-7. When this occurs, the inmate typically will have served his state sentence at a state institution and upon release is sent to federal custody for service of his

---

[3] The BOP recognizes that "[o]n occasion, a federal court will order the federal sentence to run concurrently with or consecutively to a not yet imposed term of imprisonment. Case law supports a court's discretion to enter such an order and the federal sentence shall be enforced in the manner prescribed by the court." PS 5880.28, Chapt. 1, Page 32A. This Court notes that there is a split of opinion among the courts of appeals as to whether a district court may order a sentence to run consecutively to a sentence a state court has not yet imposed. Romandine v. United States, 206 F.3d 731, 737-39 (7th Cir. 2000) (collecting cases); see also United States v. Donoso, 521 F.3d 144, 147-49 (2d Cir. 2008). In the Sixth Circuit, where Petitioner's federal sentence was imposed, the United States Court of Appeals for the Sixth Circuit held on October 9, 1998 (more than two years after Petitioner's federal sentence was imposed) that Section 3584(a) "does not authorize district courts to order a sentence to be served consecutively to a not-yet-imposed state sentence." United States v. Quintero, 157 F.3d 1038, 1039-41 (6th Cir. 1998).

federal sentence. The inmate is permitted to request that the BOP retroactively designate the state institution as the correctional institution where he began service of his federal sentence pursuant to its authority under 18 U.S.C. § 3621(b), which in effect amounts to the imposition of a retroactive concurrent federal sentence. Id. at 478-83; PS 5160.05, Pages 5-7. The BOP may also consider the state court's sentencing order as a request that the inmate be permitted to serve his federal and state sentences concurrently. PS 5160.05, Page 7.

Although the BOP must consider the inmate's request for concurrent service of sentences, it is not obligated to grant the request. Barden, 921 F.2d at 478 n.4 ("We recognize that neither the federal courts nor the Bureau are bound in any way by the state court's direction that the state and federal sentences run concurrently."); PS 5160.05, Page 6 ("there is no obligation under Barden for the Bureau to grant the request by designating a state institution retroactively as the place to serve the federal sentence."). The BOP will review the federal sentencing court's Judgement and Commitment Order, the state sentence data records, and any other pertinent information relating to the federal and state sentences. PS 5160.05, Pages 5-7. BOP policy further instructs:

> In making the determination, if a designation for concurrent service may be appropriate (*e.g.*, the federal sentence is imposed first and there is no order or recommendation regarding the service of the sentence in relationship to the yet to be imposed state term), the [The Regional Inmate Systems Administrator ("RISA")] will send a letter to the sentencing court (either the Chambers of the Judge, U.S. Attorney's Office, and/or U.S. Probation Office, as appropriate) inquiring whether the court has any objections. Regardless of where the original inquiry is directed, the U.S. Attorney's Office and U.S. Probation Office will receive a courtesy copy.
>
> *If, after 60 days, a response is not received from the sentencing court, the RISA will address the issue with the Regional Counsel and a decision will be made regarding concurrency.*

PS 5160.05, Page 6 (emphasis added).

## 2. Calculation of the date upon which a federal sentence commences

18 U.S.C. § 3585(a) governs the date a federal sentence commences, and it provides:

> (a) Commencement of sentence. – A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

A federal sentence cannot commence earlier than the date on which it was imposed. PS 5880.28, Chapt. 1, Page 13; United States v. LaBeille-Soto, 163 F.3d 93, 98 (2nd Cir. 1998); Shelvy v.

4

Whitfield, 718 F.2d 441, 444 (D.C. Cir. 1983).

When an inmate is only facing service of a federal sentence, the application of 18 U.S.C. § 3585(a) is straightforward. The BOP will designate the inmate to a federal detention facility and it will calculate the federal sentence to have commenced on the date it was imposed. PS 5880.28, Chapt. 1, Page 12. Oftentimes, however, an inmate is subject to multiple sentences, *e.g.*, at the time his federal sentence is imposed he is subject to a state sentence. In that case, the federal and state governments must resolve where and/or in what order the inmate will serve his multiple sentences. At common law, the "primary custody" doctrine (sometimes referred to as "primary jurisdiction" doctrine) developed to assist the sovereigns in making these determinations and to provide an orderly method by which to prosecute and incarcerate an individual that violated the law of more than one sovereign. The doctrine was recognized by the United States Supreme Court in Ponzi v. Fessenden, 258 U.S. 254 (1922). See, e.g., Bowman v. Wilson, 672 F.2d 1145, 1153-54 (3d Cir. 1982); Chambers v. Holland, 920 F.Supp. 618, 621 (M.D. Pa.), aff'd, 100 F.3d 946 (3d Cir. 1996).

In relevant part, the primary custody doctrine provides that *the sovereign that first arrests an individual has primary custody over him*. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him. The sovereign with primary custody *is entitled to have the individual serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction*. See, e.g., Bowman, 672 F.2d at 1153-54. Primary custody remains vested in the sovereign that first arrests the individual until it "relinquishes its priority by, *e.g.*, bail release, dismissal of the state charges, parole release, or expiration of the sentence." Chambers, 920 F.Supp. at 622 (citations omitted).

The BOP has incorporated the common law primary custody doctrine into its polices. Thus, if the federal government has primary custody of an inmate on the date his federal sentence is imposed, the federal government is entitled to have that inmate serve his federal sentence upon imposition. In such a case, the BOP will designate the inmate to a federal detention facility for service of the federal sentence and will calculate his federal sentence to have commenced on the date the federal sentencing court imposed it, even if at that same time the inmate is serving a

5

concurrent state sentence. PS 5880.28, Chapt. 1, Pages 12-13.

     If an inmate is in the primary custody of the state when his federal sentence is imposed and if his federal sentence is *consecutive to* any state sentence, the inmate will be returned to the state after federal sentencing. The BOP will commence the inmate's federal sentence under 18 U.S.C. § 3585(a) when the state relinquishes its priority and releases him to federal custody. PS 5880.28, Chapt. 1, Pages 12-13, 31-33; see also PS 5160.05, Pages 2-12. If, however, the inmate is in the primary custody of the state and the federal sentencing court orders that he serve his federal sentence *concurrently with* any state sentence, the BOP will return custody of the inmate to the state, commence the federal sentence, and designate the state facility as the place of service of the federal sentence pursuant to its authority under 18 U.S.C. § 3621(b). PS 5880.28, Chapt. 1, Page 13, 32A-33; PS 5160.05, Pages 2-12.

     Finally, the BOP acknowledges that there are occasions when an inmate will have been improperly designated to a federal detention center for commencement of his federal sentence, when he should have been returned to, or remained in, state custody for the completion of a state sentence that must be served first. The BOP directs that upon discovery of the error, the BOP staff shall "make every effort to return the inmate to state custody," and the USMS will lodge a detainer with state authorities. PS 5160.05, Pages 11-12. When such an error occurs, the BOP directs that the federal sentence should be considered as *not* having commenced since the earlier transfer to federal custody was in error. PS 5160.05, Page 12. If the federal sentencing court subsequently recommends concurrent service of the federal and state sentences, the case will be referred to the appropriate RISA. PS 5160.05, Pages 5, 12.

### B.    Relevant Facts and Procedural History

     In 1995, Petitioner was serving a term of probation from judgments of sentence imposed by the County of Cuyahoga (Ohio) Common Pleas Court at Case Numbers 306195 and 313585. On August 8, 1995, officers from the Federal Bureau of Alcohol, Tobacco, and Firearms and the Cleveland Police Department arrested him. Upon his arrest, Cleveland Police executed several state/local arrest warrants for criminal conduct which occurred between July 12, 1994, and July 22, 1995, and he thus was in the primary custody of the State of Ohio. (Ex. 2 ¶¶ 5-6, 8). He was held

in the Cuyahoga County Jail. (Ex. 2 ¶ 6b; Ex. 2c; Ex. 2i; Ex. 2k).

On August 24, 1995, the Common Pleas Court revoked Petitioner's probation on Case Numbers 306195 and 313585. It ordered Petitioner's original terms of imprisonment into execution and sentenced him to a 12-month term and an 18-month term of imprisonment, to run consecutively with each other for a total state sentence of 2 ½ years. (Ex. 2 ¶ 6c; Ex. 2a; Ex. 2b). The state court directed that Petitioner serve his sentences at Lorain Correctional Institution, and the sheriff was order to transport him to the Cuyahoga County Jail until Petitioner's pending cases were resolved. (Ex. 2a; Ex. 2b).

The following month, on September 28, 1995, a federal indictment was filed against Petitioner in the United States District Court for the Northern District of Ohio. (Ex. 1 ¶ 3; see also United States v. Eric Peterson, 1:95-cr-0342-DDD-1 (N.D. Ohio)). On October 6, 1995, the USMS filed a federal detainer with the Cuyahoga County Jail. (Ex. 2 ¶ 6(e); Ex. 2d).

On December 15, 1995, the USMS obtained temporary physical custody of Petitioner pursuant to a federal writ of habeas corpus *ad prosequendum* so that he could stand trial in federal court. (Ex. 2 ¶ 6i; Ex. 2e at 2; Ex. 2c at 3). On December 19, 1995, a federal jury found Petitioner guilty of two counts of "Felon in Possession of a Firearm," 18 U.S.C. § 922(g)(1). (Ex. 2 ¶ 6j). Petitioner was returned to state custody in satisfaction of the federal writ of habeas corpus *ad prosequendum* on December 20, 1995. (Ex. 2 ¶ 6k; Ex. 2e at 2; Ex. 2c at 3).

On March 15, 1996, the Honorable David D. Dowd, Jr., of the United States District Court for the Northern District of Ohio, sentenced Petitioner to a 72-month term of imprisonment. (Ex. 2f). Petitioner's Presentence Investigation Report ("PSR") indicated that the Cleveland Police had arrested him on August 8, 1995 and that he still had several state charges pending against him, including two counts of aggravated robbery and two counts of felonious assault at Case Number 329967 of the Common Pleas Court. (Ex. 2 ¶ 5 (quoting PSR ¶¶ 35-38)). Judge Dowd was silent as to whether he intended Petitioner's sentence to run concurrently with or consecutively to any state sentences. (Ex. 2f; Ex. 2 ¶ 6l). Accordingly, the BOP determined that Petitioner's federal sentence ran consecutive to his state sentences. (Ex. 2 ¶ 7). See also PS 5880.28, Chapt. 1, Pages 31-33; PS 5160.05, Pages 2-7.

On June 24, 1996, Petitioner entered guilty pleas on his pending state charges in the Common Pleas Court at Case Numbers 329976 and 328490. The state court sentenced him to the Lorain Correctional Institution for a total term of incarceration of 6 to 25 years, to run concurrently with his federal sentence. (Ex. 2 ¶ 6m; Ex. 2g; Ex. 2h). It also directed that Petitioner receive 301 days of state prior custody credit against the total state term of incarceration. (Ex. 2 ¶ 6m; Ex. 2g; Ex. 2h).

Three days later, on June 27, 1996, the USMS received information from the Cuyahoga County Jail indicating that Petitioner was available to be picked up. (Ex. 2 ¶ 6n; Ex. 2e at 1). The USMS Form 129 contains the following remark from June 27, 1996: "From Cyndi – Re: Eric Peterson – Cuyahoga County is finished with him." (Ex. 2e). Cheryl A. Pauley, Correspondence/Policy Specialist employed by the BOP Designations and Sentence Computation Center, states in her affidavit to this Court that the BOP then operated "under the erroneous belief that [Petitioner] had completed service of his state sentence." (Ex. 2 ¶ 10). As will be explained below, the BOP later determined that the information provided to the USMS was erroneous because Petitioner was still serving his state sentence and the state still had primary custody over him, as it had not released Petitioner via expiration of sentence, parole, bail or bond. (Ex. 2 at 6 n.6 & ¶¶ 8, 10; Ex. 2i; Ex. 2k). It appears that the authorities at the Cuyahoga County Jail should have released Petitioner to state authorities – not to the USMS – so that he could be transported to the Lorain Correctional Institution for service of his state sentences.

On July 2, 1996, Petitioner was transferred to the Federal Detention Center in Milan, Michigan. (Ex. 2 ¶ 6o; Ex. 2e at 2). The BOP designated Petitioner to the United States Penitentiary ("USP") Leavenworth in Kansas. (Ex. 1c at 2). That designation was retroactive so that Petitioner would receive credit for time served since Cuyahoga County authorities released him to the USMS. Therefore, the BOP computed his 72-month federal sentence to have commenced, pursuant to 18 U.S.C. § 3585(a), on June 27, 1996 (the date he was released erroneously to the USMS). (Document # 3 at 47A). The BOP did not credit Petitioner with any pre-sentence commencement credit, which is referred to as "prior custody" credit, under 18 U.S.C. § 3585(b). (Id.); see infra note 4. His projected release date was set at September 17, 2001. (Id.)

On April 11, 1997, Petitioner was transferred to FCI McKean. (Ex. 1d). On April 18, 1997, BOP staff at FCI McKean conducted a routine transit audit of Petitioner's federal sentence. (Ex. 2i). During this audit, it was determined that the Cuyahoga County Jail had erroneously released Petitioner to the USMS on June 27, 1996. (Ex. 2i). Because Petitioner had been in primary state custody on the date his federal sentence was imposed (March 15, 1996) and because he was still in primary state custody (as he had not been released from his state sentences by parole release or expiration of those sentences), staff at FCI McKean concluded that: the BOP had erroneously commenced Petitioner's federal sentence on June 27, 1996; that he should be sent to the State of Ohio for the service of his state sentences; and, that upon completion of his state sentences he should be returned to federal custody for commencement of his federal sentence. (Ex. 2 ¶ 6r; Ex. 2i). That same day, the BOP's Northeast Regional Office concurred with FCI McKean that Petitioner was a state inmate who had been erroneously designated to a federal detention facility. (Ex. 2 ¶ 6s; Ex. 2j).

On April 22, 1997, FCI McKean confirmed with authorities from the State of Ohio that the BOP was sending Petitioner back to the state for service of his state sentences and that the USMS would lodge a federal detainer for the return of Petitioner after completion of his state sentences. (Ex. 2 ¶ 6t; Ex. 2k). The BOP explained to the state that Petitioner's federal sentence was to run consecutive to his state sentences and that he should not have been turned over to federal authorities on June 27, 1996. (Ex. 2 ¶ 6t; Ex. 2k). On May 16, 1997, the USMS returned Petitioner to the Cuyahoga County Jail and then the State of Ohio incarcerated him on his state sentences until he was paroled to the federal detainer on December 8, 2005. (Ex. 2 ¶¶ 6u-v; Ex. 2e at 1; Ex. 1e).

When the State of Ohio released Petitioner to the federal detainer, The BOP designated Petitioner to FCI McKean for service of his federal sentence and computed his 72-month federal sentence as having commenced on December 8, 2005 pursuant to 18 U.S.C. § 3585(a). (Ex. 2 ¶ 8; Ex. 1a at 4). Information provided to the BOP from the State of Ohio Department of Rehabilitation and Corrections indicates that the state commenced Petitioner's state sentences on May 20, 1997 and that he received approximately 636 days of jail time credit against those sentences for all time

served in official detention (either state or federal) prior to May 20, 1997. Therefore, the BOP did not award Petitioner any prior custody credit under 18 U.S.C. § 3585(b).[4] (Ex. 2 ¶ 6w; Ex. 1e). His projected release date is currently set at April 16, 2011. (Ex. 1a).

Petitioner challenged the BOP's current computation of his sentence and pursued his administrative remedies with the BOP. (Ex. 1b at 9-12). The circumstances presented by this case warranted a consideration of whether Petitioner should receive a retroactive concurrent designation under 18 U.S.C. § 3621(b), and the BOP treated Petitioner's administrative appeal as a request for concurrent designation. (See Ex. 1b). Pursuant to the procedures set forth in PS 5160.05, the BOP's Regional Director explained to Petitioner that because there was no reference as to whether his federal sentencing court intended his federal sentence to run consecutively to or concurrently with any state sentence, the BOP would seek additional information before it would make a determination as to whether it would grant Petitioner a retroactive concurrent designation under 18 U.S.C. § 3621(b). (Ex. 1b at 9-10).

Petitioner appealed to the BOP's Office of General Counsel. (Ex. 1b at 11-12). In a response dated August 17, 2006, the Central Office explained that the BOP was considering Petitioner's request to receive a retroactive concurrent designation under 18 U.S.C. § 3621(b). The

_____

[4] The BOP did not give Petitioner any prior custody credit for time served in official detention prior to the commencement of his federal sentence because all of that time had been credited against his state sentences. (Ex. 2 ¶¶ 6w, 9; Ex. 1e). 18 U.S.C. § 3585(b), which governs whether the BOP may grant prior custody credit, provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –
>
> (1)        as a result of the offense for which the sentence was imposed; or
> (2)        as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> *That has not been credited against another sentence.*

(Emphasis added). This case does not present an issue of whether Petitioner is entitled to prior custody credit under 18 U.S.C. § 3585(b). That statute expressly prohibits the BOP from granting such credit in this case because the time Petitioner spent in official detention (in both state and federal facilities) prior to the date his federal sentence commenced (whether the commencement date is calculated as June 27, 1996 or December 8, 2005) was credited against his state sentences. See also Vega v. United States, 493 F.3d 310, 314 (3d Cir. 2007) (the BOP did not err when it disallowed prior custody credit under 18 U.S.C. § 3585(b) because the time at issue had been credited against the petitioner's state sentence).

Central Office noted that the BOP had contacted Petitioner's federal sentencing court for guidance, and that it was awaiting the court's response. Petitioner was advised that he would be notified of the decision once it was made. (Ex. 1b at 13).

The BOP sent a letter to Judge Dowd informing him of the circumstances of Petitioner's case. No response to this specific letter was received. (Ex. 2 ¶ 6aa). However, on June 16, 2006, Petitioner sent his own letter to Judge Dowd, and on June 27, 2006, Susan Worstall, Supervising Probation Officer for the United States District Court for the Northern District of Ohio, issued the following response:

> I have been asked to respond to your June 16, 2006 letter to Judge Dowd. The below information is similar to that in a letter I had sent you in December 1, 2005, in response to your letter to the chief probation officer.
>
> As noted via review of your file and previous correspondence from the Court, our office and the Federal Public Defender's Office, the Court did not order credit for time served or that your federal sentence was to be served concurrently to any state sentence. It is also noted that while in state custody, you were not entitled to federal credit.
>
> The Bureau of Prisons presently notes that your sentence computation began on December 8, 2005, upon completion of your state sentence, and that your release date is March 24, 2011. If you wish to pursue the time matter further, it is suggested that you speak with your unit staff.

(Ex. 1h; see also Ex. 2 ¶¶ 6y-aa).

In summary, after having been contacted by the BOP, Judge Dowd declined to offer an opinion concerning whether a concurrent designation under 18 U.S.C. § 3621(b) would be appropriate in Petitioner's case. After having been contacted directly by Petitioner, Judge Dowd, through Worstall, advised Petitioner that the court did not credit him for time served and did not order that his federal sentence was to be served concurrently with any state sentence. Therefore, the BOP has continued to presume an intention by Judge Dowd that Petitioner's federal sentence should run consecutively to his state sentences and it has declined to grant Petitioner a retroactive designation of concurrency under 18 U.S.C. § 3621(b). (Ex. 2 ¶ 6aa); PS 5160.05, Page 6.

## C. Subject Matter Jurisdiction

A challenge to a federal sentence *as imposed* must be made under 28 U.S.C. § 2255 and filed with the federal district court that convicted and sentenced the petitioner. In cases such as

this, where the petitioner is challenging the BOP's *execution* of his federal sentence, the habeas petition is properly brought under 28 U.S.C. § 2241. See, e.g., Barden, 921 F.2d at 478-79.

### D. Discussion

A federal habeas court may only extend a writ of habeas corpus to a federal inmate if he demonstrates that "[h]e is in custody in violation of the Constitution or laws of the United States[.]" 28 U.S.C. § 2241(c)(3). Petitioner asserts that he is in BOP custody in violation of the relevant federal sentencing statutes and the federal common law rule of "continuous service."

### 1. The BOP did not abuse its discretion in denying Petitioner's request for a retroactive concurrent designation under 18 U.S.C. § 3621(b)

In determining whether Petitioner is entitled to any habeas relief, this Court must first examine whether the BOP violated federal law in computing Petitioner's federal sentence as consecutive to his state sentences. This analysis requires a consideration of whether the BOP abused its discretion in declining to grant Petitioner a retroactive, or *nunc pro tunc*, concurrent designation pursuant to 18 U.S.C. § 3621(b). Barden, supra; PS 5160.05, Pages 5-7.

When Judge Dowd imposed Petitioner's federal sentence on March 15, 1996, Petitioner was in primary state custody by virtue of his arrest on August 8, 1995 on several state/local warrants. (Ex. 2 ¶ 8). He also was subject to the 2 ½ year term of imprisonment imposed by the Court of Common Pleas on August 24, 1995 at Case Numbers 306195 and 313585 as a result of his probation revocation. Moreover, additional state charges were pending against him as a result of his August 8, 1995 arrests. Judge Dowd did not order that Petitioner serve his federal sentence concurrently with any state sentence. However, because the state court subsequently ordered that Petitioner serve the state sentences imposed on June 24, 1996 concurrently with his federal sentence, the BOP considered, as it must under Barden and its own policies, whether it should exercise its discretion and grant Petitioner a retroactive concurrent designation pursuant to 18 U.S.C. § 3621(b).

Both the BOP and Petitioner informed Judge Dowd of the circumstances of Petitioner's case, and he declined to recommend that Petitioner be permitted to serve his federal sentence concurrently with his state sentences. Thereafter, the BOP rejected Petitioner's request for

12

retroactive concurrent designation under 18 U.S.C. § 3621(b). This Court cannot conclude that the BOP abused its discretion in making this determination. Barden, 921 F.2d at 484. The BOP followed the procedures set forth in PS 5160.05 in considering Petitioner's request for retroactive concurrent designation and determined that such a designation was not warranted in this case. There is no basis to grant habeas relief upon the BOP's exercise of its discretion in this case.

Although the Common Pleas Court ordered the state sentences that it imposed on June 24, 1996, to run concurrently with Petitioner's federal sentence, the BOP is charged with carrying out the sentence that the federal court imposed, not the sentence the state court imposed. Id. 480-84. Judge Dowd did not order – at the time of sentencing or at any point subsequent to sentencing (see PS 5160.05, Page 5) – that Petitioner serve his federal sentence concurrently with his state sentences, and he has not offered an opinion to the BOP regarding whether Petitioner should receive a retroactive concurrent designation. Thus, the BOP is not obligated to calculate Petitioner's federal sentence as if he has been serving it concurrently with his state sentences. At first glance the result may seem harsh, until one considers that the State of Ohio credited against Petitioner's state sentence all the time that he had been improperly held by the BOP at a federal detention facility. (Ex. 2 ¶ 9; Ex. 1e). Therefore, the duration of Petitioner's state sentences was not extended by the BOP's actions. And, because Petitioner's federal sentence is consecutive to his state sentences, he is serving his federal sentence in the manner he should be serving it.

### 2. The BOP erred in determining the date Petitioner's federal sentence commenced

Next, this Court must consider whether the BOP violated 18 U.S.C. § 3585(a) in determining that Petitioner's federal sentence commenced on December 8, 2005. As noted previously, the express terms of 18 U.S.C. § 3585(a) state that: "A sentence to a term of imprisonment *commences on the date the defendant is received in custody awaiting transportation to*, or arrives voluntarily to commence service of sentence at, *the official detention facility at which the sentence is to be served*." Petitioner was received into custody awaiting transportation to a federal detention facility to serve his federal sentence on June 27, 1996. The BOP originally calculated his federal sentence to have commenced on that date. Under the straightforward

13

application of 18 U.S.C. § 3585(a), Petitioner's federal sentence commenced on June 27, 1996, as the BOP initially determined. <u>Boston v. Attorney General of the United States</u>, 210 Fed.Appx. 190, 192 (2006).

Next, this Court must evaluate how long Petitioner's federal sentence ran, and what effect the error in designation had on Petitioner's sentence calculation. <u>Id.</u> The United States Court of Appeals considered a similar question in <u>Boston</u>, a non-precedential decision that arose from a habeas proceeding in this Court. In <u>Boston</u>, the BOP designated an inmate to a federal detention facility on November 24, 1999 and commenced service of the inmate's federal sentence. A short time later, the BOP discovered that it had erred and that the inmate had to be returned to the State of Wisconsin for service of a state sentence prior to service of the federal sentence. The BOP returned the inmate to the state and he served his state sentence until April 1, 2003, when the state released him to a federal detainer. Similar to what occurred in this case, the BOP in <u>Boston</u> re-calculated the inmate's federal sentence to have commenced on the date that the state released the inmate to the federal detainer (April 1, 2003), and it did not give the inmate any credit for the time he had erroneously spent in the federal detention facility. <u>Id.</u> at 191-92.

On appeal in the <u>Boston</u> habeas proceeding, the Third Circuit Court did not defer to the BOP policy, set forth at PS 5160.05 at Page 12, which instructs that when an inmate has been designated to a federal detention facility in error, the inmate's federal sentence will subsequently be recalculated as not having commenced on that date. Rather, the Third Circuit Court in <u>Boston</u> determined that the inmate should receive credit for the time erroneously spent in the federal detention facility, and thus the inmate's federal sentence commenced on November 24, 1999 (the date the BOP initially had commenced the inmate's federal sentence) and ran from that date until the date that the BOP had discovered its error and returned the inmate to the State of Wisconsin for service of his state sentence. The Third Circuit Court determined that the inmate's federal sentence then re-commenced on April 1, 2003, when the State of Wisconsin returned the inmate to the BOP to serve out the remainder of his federal sentence. <u>Id.</u> at 194 (citing <u>Free v. Miles</u>, 333 F.3d 550, 555 (5th Cir. 2003) (prisoner received federal credit for the six months served in error at federal facility before being correctly returned to serve state sentence at state facility). <u>But</u> <u>see</u> <u>Allen v.</u>

Nash, 236 Fed.Appx. 779, 783 (3d Cir. 2007) (declining to grant an inmate any credit for time he erroneously served in a federal detention facility as a result of the BOP's erroneous designation).

Applying the reasoning of Boston to this case, Petitioner's federal sentence commenced on June 27, 1996 and ran until he was returned to the custody of the State of Ohio on May 16, 1997. Petitioner's sentence then re-commenced on December 8, 2005, the date the State of Ohio paroled him to the federal detainer. Boston, 210 Fed.Appx. at 194; Free, 333 F.3d at 555. Therefore, it is recommended that this Court order the BOP to credit Petitioner's federal sentence with time served from June 27, 1996 to May 16, 1997.

### 3. The "continuous service" rule does not apply

Finally, this Court must determine whether the "continuous service" rule entitles Petitioner to credit for all of the time that he spent in state custody between on or about May 16, 1997 (the date he was sent back to the State of Ohio to serve his state sentences) and December 8, 2005 (the date the State of Ohio paroled him to the federal detainer). Petitioner contends that he is entitled to federal sentencing credit for this time, and in support he relies upon the United States Court of Appeals for the Tenth Circuit's decision in Weekes v. Fleming, 301 F.3d 1175 (10th Cir. 2002). In Weekes, the BOP designated the inmate to a federal detention facility on February 21, 1995 pursuant to 18 U.S.C. § 3585(a). Not long thereafter, the BOP reevaluated its decision, determined that the inmate was in primary state custody, and it transferred him from federal prison to a state correctional institution so that he could serve a state sentence. Id. at 1177-78. When the inmate completed his state sentence more than four years later, on April 18, 1999, the USMS obtained custody of him. The BOP determined that his federal sentence commenced on that date pursuant to 18 U.S.C. § 3585(a). It did not give him any sentencing credit – either under 18 U.S.C. § 3585(a) or (b) – for any time he served in official detention before April 18, 1999. Id. at 1178.

In his subsequent Section 2241 habeas petition, the inmate in Weekes contended that the BOP erred in calculating his sentence. He argued, *inter alia*, that he was in primary federal custody when his federal sentence was imposed and that the BOP's original sentence computation was correct. The BOP countered that the inmate was in primary state custody on the date of his federal sentencing and that its subsequent sentence computation was appropriate under 18 U.S.C. §

15

3585(a). The Tenth Circuit Court agreed with the inmate and therefore held that his federal sentence commenced on the date that the BOP had originally determined that it had commenced. Id. at 1179. It then held that the BOP had interrupted the inmate's federal sentence when it transferred him to a state correctional facility after his federal sentence had been properly commenced and that it erred when it disallowed him any credit for the time he served in the state correctional institution. This, it held, was a violation of the "continuous serve" rule. Id. at 1179-82. That rule provides that "unless interrupted by fault of the prisoner … a prison sentence runs continuously from the date on which the defendant surrenders to begin servicing it." Id. at 1180 (citing Dunne v. Keohane, 14 F.3d 335, 336 (7th Cir. 1994)).

The instant case is factually distinguishable from Weekes. Unlike the inmate in Weekes, in this case Petitioner was in primary custody of the state, not the federal government, when his federal sentence was imposed. Additionally, the State of Ohio did not waive its primary custody over Petitioner. Rather, it appears that local authorities at the Cuyahoga County Jail erred when they released Petitioner to the USMS on June 27, 1996, instead of sending Petitioner to a state correctional facility to serve his state sentences. Also noteworthy is that when contacted by the BOP and told that Petitioner had been erroneously designated to a federal detention facility, the Ohio Department of Rehabilitation and Corrections did not disagree with the BOP and it accepted Petitioner back into state custody for the next 8 ½ years (from on or about May 16, 1997 to December 8, 2005).

However, even if this case were not factually distinguishable from Weekes, this Court should still not apply the "continuous service" rule to this case. In Boston, the Third Circuit Court, following decisions of other courts of appeals, refused to apply the "continuous service" rule, observing that it is "is only a rule of interpretation … laden with considerations of policy" and "not a constitutional command[.]" 210 Fed.Appx. at 193 n.2 (quoting Dunne, 14 F.3d at 336); see also Free, 333 F.3d at 555 ("The rule against piecemeal incarceration precludes the government from artificially extending the expiration date of a prison sentence; the rule does not, however, justify or mandate that a prisoner receive a 'get out of jail early' card any time that such a minuet occurs, even when the prisoner is not at fault."). It further explained that "courts have not followed [the

continuous service] rule without exception.… [T]he danger that the rule protects against is that the government might abuse its coercive power to imprison a person and *artificially extend the duration of the sentence by continuously releasing and then reincarcerating the prisoner*." Id. at 193 (emphasis added) (citing Free, 333 F.3d at 554 (refusing to apply the continuous service rule when the inmate's total time of incarceration in both federal and state prisons had not been increased as a result of his mistakenly serving the first six months of his federal sentence prior to completing the service of his state sentence)); see also Dunne, 14 F.3d at 336; Cox v. United States, 551 F.2d 1096, 1099 (7th Cir. 1977).

In Vega, the Third Circuit Court held in a precedential opinion that the "continuous service" rule would apply if negligence on the part of the BOP resulted in an inmate being *erroneously released from incarceration to his liberty, and then was reimprisoned upon the discovery of the government's error.* 493 F.3d at 314-23. But in Boston it expressly declined to apply the "continuous service" rule where, as is the case here, an inmate simply is reclassified from a federal detention facility to a state detention facility for the purpose of having him serve a state sentence before serving a consecutive federal sentence. 210 Fed.Appx. at 193 ("Where a prisoner's total time of incarceration in both federal and state prison will not be increased as a result of his mistakenly serving a portion of the federal sentence before completing his state sentence, the central concern of the rule is not invoked."); Allen, 236 Fed.Appx. at 787 (citing Dunne, 14 F.3d at 337 for the proposition that the continuous service rule "has no applicability when a prisoner is simply reclassified for the purposed of having him serve a state sentence before serving a consecutive federal sentence[.]"); see also Free, 333 F.3d at 555 ("Free is serving the correct total of time of his *consecutive* state and federal sentences. That he will have done so in two shifts between sovereigns rather than one is of no moment.") (emphasis in original).

In conclusion, the "continuous service" rule does not apply to this case because the BOP has not "artificially extended the duration" of the 72-month federal sentence that Judge Dowd imposed. Nor, for that matter, did the BOP's actions extend the duration of the sentences the state court imposed.

### E.    Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  Amended Section 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  Where the federal district court has rejected a constitutional claim on its merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]"  Szuchon v. Lehman, 273 F.3d 299, 312 (3d Cir. 2001) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  Federal prisoner appeals from the denial of a Section 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement.  United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B).

### III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Petition for Writ of Habeas Corpus be granted in part and that the BOP be ordered to credit Petitioner's federal sentence with all time served between June 27, 1996 and May 16, 1997.  It is further recommended that Petitioner's request for habeas relief be denied to the extent that he seeks credit against his federal sentence for the time he served in the state detention facility (from May 16, 1997 until December 8, 2005).

In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4(B), the parties are allowed 10 days from the date of service to file written objections to this Report and Recommendation.  Any party opposing the objections shall have 7 days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.  See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

Dated: December 4, 2008

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
CHIEF UNITED STATES MAGISTRATE JUDGE

18